Peck, J.
It is sought in this pi’oceeding, to determine the pres ent right of the relator and of .the defendant, to the sheriffalty of rion county; and as it has been represented to us, that it is the desire not only of the parties, but also of the commissioners of Marion county, that the ultimate right of the relator, upon the facts set forth in his application, should be determined under the motion, we have concluded to do so, although in our opinion, the relator has not sought the appropriate remedy for the grievance of which he complains.
The defendant was elected in October, 1857, to the office of sheriff of Marion county, and was thereto duly commissioned and qualified. He accepted the office and discharged its duties and thereby acquired a right to the office and its emoluments, until his successor was elected and qualified.
The relator, on the other hand, was elected as the successor of the defendant in October, 1859, for a term of two years, commencing on the first day of January last (55 Ohio *Laws, 150), but has never yet given bond, as required by law, to the acceptance of the county commissioners. Ib. and Swan’s Stat. 134. He avers, it is true, that he tendered such a bond as the commissioners ought to have received, but which they wrongfully refused to accept. He was not authorized to enter upon the duties of his said office and oust the defendant, until his official bond had been accepted and approved by the county commissioners. If the bond was, in fact, rejected by them, though for an insufficient or improper reason, the sureties in that bond could hardly be held responsible for his subsequent official delinquencies. If the facts stated in the information are true, he should have applied for a mandamus to compel the county commissioners to accept and approve his bond, instead of proceeding by quo warranto against the former incumbent, who rightfully retains the office until his successor has been, in all respects, qualified to assume its duties. For these reasons, the present application must be. refused.
But if the facts stated in the petition are true, we think the relator is, in law, entitled to the office, and, upon proper application, should not hesitate to compel the county commissioners of Marion county to accept and approve of the official bond of the relator.
*105 It appears from the information that, at the last October election, the relator was duly elected as sheriff of Marion county, for the term of two years, to commence on the first day of January-instant.
On the 7th day of December, a commission to the relator, as such, sheriff elect, was made out by the governor and forwarded to the clerk of Marion common pleas. On the 10th day of December, twenty-one days before the said official term commenced, that commission was delivered to the relator by the said clerk.
On the 8th day of January, 1860, being less than ten days after •the commencement of the term, the relator tendered *to the county commissioners of said Marion county his official bond in ■due form and conditioned according to law, in a sum and with sureties satisfactory to said commissioners, which the commission■ers declined to accept and approve, merely because the bond had not been so tendered within ten days from the time the commission was delivered by the clerk to the relator.
On the same day the relator took and subscribed, in due form, the official oath as such sheriff, before the probate judge of said county.
The steps thus taken by the relator to qualify himself for his •said office, are admitted to .have been, in all respects, in conformity to the laws in force, except, that the bond, conditioned for the faithful discharge of his duties, was not presented to the commissioners for approval, within ten days from the day when his commission was handed to him by the clerk, though it was so presented within ten days from the commencement of the term for which he was thereby commissioned. Was the bond so tendered for this cause, 'properly rejected by the county commissioners?
By the act of January 19, 1853 (Swan’s Stat. 134, secs. 1, 5), it is provided, that all sheriffs and coroners thereafter elected, shall, within ten days after they shall have received their commissions, give bond to the State of Ohio, with two or more sureties, to be approved of by the commissioners of the proper county, in any sum not exceeding $50,000, nor less than $5,000 (at the discretion of the commissioners), conditioned for the faithful discharge of their duties, and if they fail to give the necessary security within the time prescribed by law, the commissioners are thereby authorized and required to declare the office vacant, and thereupon the proper proceedings shall be had to fill the vacancy.
*106 In ordei’ to determine the force and effect of this requirement to-give bond within ten days, contained in the law *of 1853, it. is proper to look to the former legislation upon that subject.
The acts of January 5,1805 (1 Chase Stat. 486), and that of February 2, 1821 (2 Chase, 1193), both imposed the duty upon sheriffs-elect, to give bond .within ten days from the time of receiving their’ commissions, but do not prescribe any consequences of their failure-to do so.
The intermediate law of January 25,1813 (2 Chase, 789), declaring-offices vacant in certain cases, had provided in its fourth section, that his failure to give the bond within the time prescribed by law,, should be deemed a refusal to accept the office, and it should thereupon be considered vacant, and the vacancy should be filled as in-other cases.
The act of February 25,1824 (2 Chase, 1351), “ defining the duties of sheriffs and coroners in certain cases,” provides that in such a case, the sheriff shall be deemed to have resigned his office.
This is a brief history of the legislation in Ohio, upon this subject, prior to the passage of the act of January 19, 1853.
Prior to the act of March 8, 1854 (Swan’s Stat. 879), no law had been enacted fixing a time, subsequent to the election, when the term of a newly-elected sheriff should commence; and the commission never issued to take effect at a future period, but conveyed a present right to exercise the powers and receive the emoluments of the office. The terms for which they were elected, began to run from the actual reception of the commission, and if they neglected to qualify immediately, the omission to do so necessarily abbreviated the actual enjoyment of the office.
The constitutional and legislative provisions, that an officer elected for a specified term, should hold such office, not only for the term, but until his successor should be elected and qualified, were designed to prevent any vacancy, in fact, in the office to the injury or hindrance of the public, through the inability or neglect of the person elected, to qualify himself to discharge its duties. And to *guard against any unreasonable delay upon his part thus to qualify, the provision was inserted in' the various laws above referred to, that a failure to do so for the space of ten days next after his reception of the commission, should create a vacancy in the office.
Under the law and practice prior to 1854, the commission, when *107 delivered, was a warrant for the immediate exercise of the powers-thereby delegated, and there was a manifest propriety in limiting' the period within which the person commissioned should signify his acceptance.
The law of 1853, and those prior to it, evidently contemplate,, that the person who thus delays to give the bond was, by his commission, entitled to the immediate exercise of his office, so that a-failure to qualify would create a vacancy in such office for the time. If on the expiration of the ten days, the office to which the commission relates, was still in the possessidn of his predecessor, as: part of Ms unexpired term, there could not be, at that time, any vacancy in the office, nor could one properly be declared. The-statute does not speak of a vacancy thereafter to occur, but as actually existing, and one which the authorities are required to fill. %
If this view of the act of 1853 is correct, it is manifest that the-requirement upon the sheriff, to give bond within ten days from the time of receiving his commission, was not intended to apply to-a commiss’ion to take effect at a future day, and actually received by him more than ten days before any present right to the office is-thereby conferred. Any other interpretation would involve the absurdity of requiring the officers to declare a vacancy where no ■ vacancy in .fact existed; to fill a vacancy where there was none to ■ fill. But though the act of 1853 does not apply to commissions in futuro, but only to commissions in presentí, it will still apply to-commissions issued under the act of March 8, 1856, and of April 12, 1858, as soon as they confer a present authority to act; -and. the holder of such a commission must • qualify under the law, *within ten days from the time the office it creates should have commenced. “By interpretation, we seek to discover the-very meaning of the terms employed, as applicable to the subject-in contemplation of the law-giver, when he used those words,” and we gather from the act itself, the invariable practice in regard to-the issuance of such commissions, and the consequences which were-to follow a failure to give the bond, that the commission spoken of in the act of 1853, was one conferring upon the party thereby commissioned an immediate authority to act, and not a commission to-take effect at some future time. “ By construction, we seek to discover the spirit of the law-giver, in order to apply it to a case to-which the words of the law do not extend, and which was not evidently in the mind of the law-giver when he uttered the words,” *108 •and we find that the legislature, regarding sheriff’s commissions as ■ operating only in presentí, provided by the ■ act of 1853, that if a ■ party commissioned, and to whom the commission had been delivered, should delay for more than ten days, after he was entitled to the possession of the office, to give the bond required by law, his ■ office might be declared vacant. Thus construed, the law of 1853 will apply to commissions issued under the law of 1858, to take effect at a future day, and impose upon the party commissioned, the •duty of presenting his bond for approval within ten days after the term has commenced, if it has been previously received by him.
The construction we have thus placed upon the law of 1853, is • consistent with terms employed as they were then understood, and at the same time relieves the act from the absurdity and apparent contradictions which would attach to it, if now applied to commissions that do not confer a present authority to act, and thereby render its salutary provisions applicable alike to all commissions.
The laws regulating county auditors and county treasurers, under •pain of a forfeiture of their respective offices, to give bond on or before the day their respective terms ^commence, also tend to fortify the construction given to the law of 1853. They are elected at the same time, and commissioned in the same manner, •.and doubtless, in many cases, receive their commissions long before ■their terms commence, and yet they are only required to give ■bonds in March and in June, and not until they are entitled to take ■possession of their offices.
The law of 1853 does not, like the former laws, declare the office vacant upon a failure to give hond within the time prescribed ; but merely authorizes the commissioners to declare it vacant. They do mot appear to have so declared it, and it would, perhaps, be going too far to say that under the law of 1853, and in default of such .affirmative act on the part of the commissioners, the relator’s right do his office was gone.
We prefer, however, to place our decisiou upon the ground first taken, that the relator did not forfeit his right to the office by a ■failure to tender the bond to the commissioners on or before the ■20th day of December, 1859; and that, having tendered a bond within ten days after the commencement of his official term, in all respects unexceptionable to them, it- was their duty to have accepted it.
*109 This application, however, for a quo warranto must, for the reasons first assigned, be dismissed with costs.
Brinkerhorr, C. J., and Scott, Sutlirr, and G-holson, JJ., concurred.